CHARLES P. DIAMOND (SB # 56881)
LAW OFFICES OF CHARLES P. DIAMOND
cdiamond@omm.com
WAQAS A. AKMAL (SB #316601)
DANIELLE TYUKODY (SB #360087)
O'MELVENY & MYERS LLP
wakmal@omm.com
dtyukody@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California  90067-6035
Telephone:  +1 310 553 6700
Facsimile:   +1 310 246 6779

Attorneys for Defendant
JAMES A. MCDONALD, JR.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| UNITED STATES OF AMERICA, | Case No. 2: 23-CR-0019-DSF-1 |
|---|---|
| Plaintiff, | **DEFENDANT'S POSITION REGARDING RESTITUTION** |
| v. | HEARING DATE: NOV. 10, 2025 |
| JAMES ARTHUR MCDONALD, JR., | TIME:  8:30 AM |
| Defendant. | COURTROOM: 7D |
| | HON. DALE S. FISCHER |

## I.    INTRODUCTION

James A. McDonald accepts full responsibility for his conduct.  He is deeply remorseful for the harm he has caused and is committed to ensuring that every person who lost money as a result of the unlawful conduct for which he pleaded guilty is fully and promptly repaid.  Mr. McDonald has pledged to make victims whole to the fullest extent of the law, and where the government has met its burden with reliable, individualized proof of loss, he welcomes the opportunity to make things right.  That is evident here:  he does not contest the victim status or loss calculations for the vast majority of individuals the government claims are entitled to restitution.

1    However, restitution must reflect actual, verifiable losses proximately caused
2    by the offense for which Mr. McDonald has pled guilty and for which he has been
3    sentenced.  As discussed below, the government has failed to meet its burden to
4    establish either victim status or loss amount for a limited set of individuals, and it
5    may not substitute generalized narratives or speculation.  While Mr. McDonald
6    stands ready to begin repaying every dollar he owes to victims that have suffered
7    losses as a result of his misconduct, he should not be required to pay restitution to
8    individuals who are not in fact victims or in amounts that exceed their provable
9    losses.

10    **II.    ARGUMENT**
11        **A.    Legal Standard**
12        The Mandatory Victims Restitution Act (MVRA), which governs restitution
13    in this case, "makes restitution mandatory for particular crimes, including those
14    offenses which involve fraud or deceit."  *United States v. Gordon*, 393 F.3d 1044,
15    1048 (9th Cir. 2004).  However, the MVRA requires the Court to only order
16    restitution to victims for actual losses directly and proximately caused by the
17    offense of conviction, proven by a preponderance of reliable evidence.  *See* 18
18    U.S.C. § 3663A (defining "victim" as "a person directly and proximately harmed as
19    a result of the commission of an offense.")*.*  The purpose of the MVRA is "to
20    ensure that the loss to crime victims is recognized," that "[victims] receive the
21    restitution that they are due," and that the "offender…pays the debt owed to the
22    victim as well as to society."  *United States v. Cienfuegos,* 462 F.3d 1160, 1165
23    (9th Cir. 2006).
24        To establish the amount of loss, "the government must provide the court with
25    enough evidence to allow the court to estimate the 'full amount of the victim's
26    losses' with 'some reasonable certainty.'"  *United States v. Kennedy*, 643 F.3d
27    1251, 1261 (9th Cir. 2011).  Ninth Circuit "precedent grants 'district courts a
28    degree of flexibility in accounting for a victim's complete losses.' [However,] 'the

DEFENDANT'S
RESTITUTION STATEMENT

1    district court may utilize only evidence that possesses 'sufficient indicia of

2    reliability to support its probable accuracy.'" *United States v. Waknine*, 543 F.3d

3    546, 557 (9th Cir. 2008).

4         With regards to proximate cause determinations in restitution proceedings,

5    courts have held that victims of securities fraud "must prove both transaction and

6    loss causation" to recover in restitution, where "transaction causation refers to the

7    causal link between the defendant's misconduct and the plaintiff's decision to buy

8    or sell securities," and "loss causation…refer[s] to the requirement that the wrong

9    for which the action was brought is a but-for cause or cause-in-fact of the losses

10   suffered." *United States v. Marino*, 654 F.3d 310, 321 (2d Cir. 2011) (citations

11   omitted).

12        Under 18 U.S.C. § 3664(e), a dispute as to the proper amount of restitution

13   must be resolved by the district court by a preponderance of the evidence. *See*

14   *United States v. Clayton*, 108 F.3d 1114, 1118 (9th Cir.1997).  The government

15   bears the burden of proving that a person or entity is a victim for purposes of

16   restitution and of proving the amount of the loss.  18 U.S.C. § 3664(e); *see also*

17   *Waknine,* 543 F.3d at 556.  The statute requires identification of specific victims

18   and their actual losses. Restitution cannot be awarded in the abstract or across an

19   undifferentiated cohort; rather, it must be supported by individualized proof tying

20   each claimant's loss to the offense conduct.

21        In *Waknine*, the Ninth Circuit reversed a restitution order that was based only

22   on "one-page loss summaries" provided by victims in affidavits.  *Id. at 557*.  In so

23   ruling, the court explained that "the government [had] offered insufficient evidence

24   to prove that it [was] more likely than not that the victims lost the amounts listed in

25   ... the[ ] summaries." *Id. at 557*; *see also United States v. Garcia-Sanchez,* 189

26   F.3d 1143, 1148-49 (9th Cir.1999) (in which the Ninth Circuit held that "the district

27   court [may] utilize only evidence that possesses 'sufficient indicia of reliability to

28   support its probable accuracy.'").

1    Since *Waknine*, additional Ninth Circuit opinions have grappled with

2    contested restitution calculations and determined that a restitution award cannot be

3    based solely on unsupported and unexplained victim statements of losses.  *See*

4    *United States v. Andrews*, 600 F.3d 1167, 1172 (9th Cir. 2010) (reversing a

5    restitution order because it was issued in exclusive reliance on the victim's evidence

6    as to causation); *United States v. Tsosie,* 639 F.3d 1213, 1222-3 (9th Cir. 2011)

7    (finding a spreadsheet offered without sworn statements explaining its entries to be

8    insufficient under the *Waknine* standard).

9    As these precedents make clear, § 3664(e)'s reference to a "preponderance of

10   the evidence" requires that, when there is a dispute as to restitution, a restitution

11   order must be supported by evidence in the record showing that it is more likely

12   than not that the defendant's offense proximately caused the losses for which

13   restitution was awarded and that it did so in the amounts awarded.  Summary

14   spreadsheets, generalized assertions, or conclusory affidavits standing alone are

15   insufficient.  When a defendant raises specific objections to victim status or

16   amount, the Court must require reliable, record-based proof and articulate an

17   explanation supported by the record.

18   **B.    Defendant Does Not Dispute Victim Status or Loss**
19   **Calculation for the Vast Majority of Individuals Listed in**
     **the Government's Submission**

20   As detailed in his Pre-Sentencing Submission (Dkt. No. 47), Mr. McDonald

21   does not dispute that he owes restitution to members of T.I., J.M., A.C., B.C. Z.Z.,

22   V.S., R.S., and V.G. and E.G.  Mr. McDonald acknowledges that his actions have

23   harmed these individuals and that they are owed restitution.  Mr. McDonald also

24   agrees with the loss calculation provided in the government's submission (Dkt. No.

25   70).  Those individuals and their associated loss calculation are detailed here:

26

27

28

DEFENDANT'S
RESTITUTION STATEMENT

| Investor Name | Loss Calculation |
|---|---|
| T.I. | $566,044.37 |
| J.M. | $325,000.00 |
| A.C. | $402,435.25 |
| B.C. | $280,795.00 |
| Z.Z. | $400,000.00 |
| V.S. | $29,900.00 |
| R.S. | $309,400.00 |
| V.G. and E.G. | $178,850.00 |

Ordering restitution to these individuals for the amounts listed above gives effect to the MVRA's mandate to award restitution to victims that have proven and proximately caused losses.  The total loss incurred by this group is $2,492,424.62.

### C.    C.M.'s Restitution Amount Must Be Netted to Take into Account the Value of a Vehicle

Mr. McDonald does not challenge that C.M. is a victim and that he is owed restitution.  He simply requests that he be given proper credit for a highly customized 2013 Mercedes AMG SL63, valued at $70,000, he transferred to C.M. The government calculates a total loss amount of $280,000 for C.M., but this number fails to offset the value of the vehicle that everyone agrees Mr. McDonald voluntarily relinquished to C.M. as partial repayment for losses he sustained. [1]

Restitution must reflect actual, net loss and be reduced by repayments or property returned on account of the offense.  *See United States v. Kennedy*, 643 F.3d 1251, 1261 (9th Cir.2011) (holding that under the MVRA, restitution "may be awarded only for losses for which the defendant's conduct was an actual and

---

[1] C.M. has not disputed his receipt of the automobile.  As established by the declaration of counsel, submitted herewith, contemporaneous reliable public records established its value of $70,000 at the time Mr. McDonald surrendered it.

1   proximate cause."). Once a defendant provides evidence of an in kind return of

2   value, as Mr. McDonald has done here, the government, the government must

3   supply reliable evidence establishing that the transfer was unrelated to the offense

4   and therefore not creditable. *See United States v. Waknine,* 543 F.3d 546, 556 (9th

5   Cir. 2008). Here the government has failed to do so.

6       The government's assertion that the vehicle was surrendered to satisfy a

7   mechanic's lien is unsupported by any invoice, ledger, lien filing, payoff

8   calculation, or other contemporaneous documentation. C.M. has failed to submit a

9   sworn victim statement detailing the mechanic's lien and has not submitted any

10  proof of any unpaid repair balance or the existence of a lien, except to mention in

11  an interview with the government on July 10, 2025 that Mr. McDonald had an

12  unpaid bill of approx. $25,000. On this record, the claim that the car was somehow

13  surrendered to C.M. to payoff a debt is a conclusory narrative, not evidence with

14  sufficient indicia of reliability.

15      In *United States v. Waknine*, the court reversed a restitution award that was

16  based solely on summary victim affidavits like CM's. The court found that these

17  affidavits lacked sufficient detail and reliability, especially in the face of the

18  defendant's objections. The court emphasized that while affidavits are not per se

19  insufficient, they must be detailed enough to allow the court to determine the actual

20  losses caused by the defendant's conduct. *See* 543 F.3d 546 (9th Cir. 2008).

21  Similarly, in *United States v. Tsosie*, the court found that restitution orders based

22  only on one-page loss summaries in victim affidavits, without further supporting

23  evidence, were not supported by a preponderance of the evidence. The court

24  explained that the government must do more than simply present general invoices

25  or conclusory statements; it must provide evidence that is specific and reliable. *See*

26  639 F.3d 1213 (9th Cir. 2011).

27      Because the only reliable, undisputed fact is that C.M. received a vehicle

28  worth approximately $70,000, that value must be credited, and C.M.'s net

DEFENDANT'S
RESTITUTION STATEMENT

1    restitution set at $210,000.  This outcome is fully consistent with Ninth Circuit

2    requirements that restitution quantify actual net loss, avoid speculation, and rest on

3    reliable proof.  The government's ipse dixit about a separate debt cannot defeat a

4    credit the record otherwise compels.

5                  **D.    The Government Has Not Proven Victim Status or**

6                        **Proximate Causation for Four Individuals**

7         The government urges the Court to award restitution to A.F., D.P., E.F., and

8    S.W. based solely on the fact that they deposited money into a Bank of America

9    account held under the name of Index Strategy Advisors (account number ending in

10   0758).  It offers no other evidence that the sums were deposited with the

11   expectation that they would be invested, would grow, or even that they would be

12   returned.  For all we know from the record, each of these deposits could have be

13   made as payment for some other service Mr. McDonald or ISA provided or as a

14   gift.

15        The government's showing is plainly insufficient under controlling law. It is

16   notable that the government fails to address any of these four individuals in detail in

17   its filing, except to note that "no reasonable investor would have entrusted her

18   savings to defendant had she known the truth." (Dkt. No. 70 at 6).  The MVRA

19   requires proof that each claimant suffered an actual loss directly and proximately

20   caused by the specific offense conduct, established by a preponderance using

21   evidence with sufficient indicia of reliability, and supported by reasoned, claimant

22   specific findings.

23        None of these four individuals has submitted a victim impact statement

24   claiming they were induced to deposit money into the ISA Bank of America

25   account as a result of a misrepresentation or omission; none has asserted fraud in

26   any statement to the SEC, FBI or the U.S. Attorney's Office.  Moreover, no record

27   evidence demonstrates that McDonald misrepresented or omitted, whether material

28   or otherwise.  None claims to have received any false statement, and the

government's production contains nothing suggesting even a single communication from McDonald to any of them or that they even met. Granted, the production contains ostensibly a few false monthly ISA statements regarding the accounts of D.P. and E.F. obtained from a Hercules computer, but there is no evidence to explain who created them or why, or that proves any were ever transmitted to the individuals for whom the government is now seeking restitution. For A.F. and S.W., the record does not even contain a monthly statement.

In short, the government has not met its burden by simply listing individuals on a spreadsheet without providing any evidence to suggest they were defrauded by McDonald. In this regard, this case is thus strikingly similar to *United States v. Holmes*, 673 F. Supp. 3d 1049, 1063 (N.D. Cal. 2023), *aff'd*, 129 F.4th 636 (9th Cir. 2025), where the government similarly relied on a spreadsheet of investors, and "argu[ed] that the Court should infer that all of these investors had relied on Defendants' representations…" The court declined: "[T]he Court does not find the mere fact that an individual or entity had invested in Theranos to be sufficient to prove by a preponderance of the evidence that the investment was the direct result of Defendants' misrepresentations." *Id.* (citation omitted).

The mere fact of deposits into a bank account is not enough. Ninth Circuit precedent squarely rejects awarding restitution based on generalized narratives, summary spreadsheets, or conclusory attestations. The government must present reliable, claimant specific proof, and the Court must make reasoned findings. On this record, the government has not met its burden for A.F., D.P., E.F., and S.W. The Court should deny restitution as to these claimants.

### E.    Interpleader Action[2]

The government has accurately stated the current state of the interpleader action, into which Mr. McDonald deposited $1.45 million for the benefit of

---

[2] *Brown Neri Smith & Khan LLP v. McDonald-Hercules et al.*, Los Angeles Superior Court, Case No. 22STCV01008.

DEFENDANT'S
RESTITUTION STATEMENT

claimants: "no funds have yet been disbursed in connection with the interpleader action in state court." (Dkt No. 70 at 10). However, the government has failed to propose any fair or equitable way for how those funds should be used as it relates to the restitution claimants.

In April 2025, B.C. and A.C., both of whom have obtained judgements in the state court action totaling $704,599.00, argued in state court that "that **the subject proceeds be split between all claimants that have obtained judgments** against the Defendants" and that "**only claimants who have obtained judgments should be entitled to share in the insurance proceeds that are the subject of this interpleader action**." *See* Decl. of Waqas Akmal, Exhibit B (Emphasis added). They also argued that "any judgment holder who has obtained money through other actions related to those losses should not be entitled to equitable relief in the interpleader action to the extent it would constitute a windfall over a pro-rata distribution or double recovery." *See id.*

Mr. McDonald requests that the Court enter an order requiring all restitution claimants who are seeking to recover funds directly from Mr. McDonald first be required to make a good faith attempt to obtain payment from the interpleader fund that is currently held in Los Angeles Superior Court.  Section 3664(m)(1)(B) of Title 18 entitles a restitution recipient to an "abstract of judgment certifying that a judgment has been entered in favor of such victim in the amount specified in the restitution order."  Such a judgment becomes "a lien on the property of the defendant located in such State in the same manner and to the same extent and under the same conditions as a judgment of a court of general jurisdiction in that State."  As B.C. and A.C. have argued before the Superior Court, such a judgment entitles restitution claimants to share in the proceeds of the interpleader fund and priority over non-judgment claimants.

Requiring restitution recipients to make a good faith effort to collect from the interpleader is entirely consistent with the MRVA.  The interpleader fund is not an

insurance policy.  By virtue of the settlement Mr. McDonald made with his insurer, the settlement funds became his property, which he directed his counsel to turn over to the Superior Court for the benefit of creditors.  *See* Declaration of Ethan Brown, Ex. N to Appendix of Exhibits (filed under seal July 21, 2025), at 32. The MRVA contemplates that restitution claimants will seek recourse against other funds of the defendant.  In § 3663(j)(2)(B) it provides that "[a] ny amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in . . . any State civil proceeding, to the extent provided by the law of the State."  In fairness to Mr. McDonald, restitution claimants should be required to make recourse against the interpleader fund before it is frittered away for the benefit of fringe claimants. Without an order, they have little incentive to do so.[3]

## III.   CONCLUSION

For the foregoing reasons, Mr. McDonald respectfully requests that this Court order restitution in the amount of $2,702,424.62, and enter judgments in favor of the claimant in those amounts with the direction that they seek recourse from the Superior Court from the $1.45 million *Brown Neri* fund at pain of forfeiting their right to restitution should they fail to pursue payment from the fund in good faith.

| Investor Name | Loss Calculation |
|---|---|
| T.I. | $566,044.37 |
| J.M. | $325,000.00 |
| A.C. | $402,435.25 |
| B.C. | $280,795.00 |

---

[3]Both V.G. and E.G. and Z.Z. were named defendants in the state court interpleader action, and they were served with the Amended Complaint.  To date, none has filed a claim against the interpleader fund.

| | |
|---|---|
| Z.Z. | $400,000.00 |
| V.S. | $29,900.00 |
| R.S. | $309,400.00 |
| V.G. and E.G. | $178,850.00 |
| C.M. | $210,000.00 |
| A.F. | $0 |
| D.P. | $0 |
| E.F. | $0 |
| S.W. | $0 |

Dated:  November 3, 2025

Respectfully submitted,

CHARLES P. DIAMOND
WAQAS A. AKMAL
DANIELLE TYUKODY

By: *s/ Waqas A. Akmal*
      Waqas A. Akmal

Attorneys for Defendant
James A. McDonald, Jr.

DEFENDANT'S
RESTITUTION STATEMENT