TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
Assistant United States Attorney
Acting Chief, Criminal Division
NISHA CHANDRAN (Cal. Bar No. 325345)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-1259/2429
     Facsimile: (213) 894-0141
     E-mail:    alexander.schwab@usdoj.gov
                nisha.chandran@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>              v.<br><br>JAMES ARTHUR MCDONALD, JR.,<br><br>           Defendant. | No. CR 23-19-DSF<br><br>GOVERNMENT'S SUPPLEMENTAL POSITION REGARDING RESTITUTION; SECOND SUPPLEMENTAL DECLARATION OF RYAN ASATO |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys Alexander B. Schwab and Nisha Chandran, hereby files its supplemental position regarding restitution pursuant to the Court's order dated November 10, 2025 (Dkt. 82).

This supplemental position regarding restitution is based upon the government's previously filed sentencing position (Dkts. 37, 43, 58) and restitution position (Dkt. 70), the files and records in this

case, including the Revised Presentence Investigation Report (Dkt. 55), and such further evidence and argument as the Court may permit.

Dated: December 15, 2025        Respectfully submitted,

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

      /s/
NISHA CHANDRAN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

As this Court knows, defendant was the Chief Executive Officer ("CEO"), Chief Investment Officer ("CIO"), and investment adviser representative of Hercules Investments LLC and the CEO and CIO of Index Strategy Advisors Inc. ("ISA"). Relevant here, beyond defrauding his Hercules clients to the tune of $566,044.37, defendant defrauded his ISA clients. He falsely represented to ISA clients that he would use their money to trade securities. In reality, he used less than half of the approximately $3.6 million he raised from ISA clients for trading purposes and conducted no trading at all with ISA client money from October 2020 to May 2021. Instead, defendant frequently commingled ISA client funds with funds from his personal bank account, which itself had been commingled with ISA funds and funds from Hercules clients. Using approximately $1.4 million of the commingled funds, defendant made Ponzi-like payments to ISA clients -- that is, paying ISA clients using funds from other clients. Defendant also used approximately $1 million of ISA money to purchase luxury cars and to pay rent on his home, personal credit card charges, and Hercules operating expenses. In total, victim investors in ISA invested $3,284,600.00.

The parties previously filed their positions regarding restitution on September 22, 2025 (Dkt. 70)[1] and November 3, 2025 (Dkt. 81) and the Court held a restitution hearing on November 10, 2025. (Dkt. 82.) As a result, the parties narrowed the restitution disputes to two questions: (1) whether the losses incurred by ISA

---

[1] The government incorporates the arguments from its restitution position here.

victims A.F., D.P., E.F., S.W. and C.W. were caused by defendant's fraud; and (2) whether a vehicle that defendant surrendered to ISA victim C.M. was in satisfaction of a mechanic's lien, and thus unrelated to C.M.'s losses from ISA.  Since the hearing, the government has confirmed with those ISA victims that the answer to both questions is yes.  Defendant should be ordered to pay full restitution to the victims of his fraudulent scheme in the amount of $3,244,724.62.[2]

**II. ARGUMENT**

**A.   Legal Standard**

Section 3664(e) requires that the Court shall resolve any disputes as to the proper amount or type of restitution by a preponderance of the evidence, with the burden of demonstrating the amount of loss sustained being on the government.  18 U.S.C. § 3664(e).  This requirement has been interpreted to mean that "when there is a dispute as to restitution, a restitution order must be supported by evidence in the record showing that it is more likely than not that the defendant's offense proximately caused the losses for which restitution was awarded and that it did so in the amounts awarded."  United States v. Tsosie, 639 F.3d 1213, 1221-22 (9th Cir. 2011).

**B.   The Court Should Award $3,244,724.62 in Restitution**

A summary of defendant's remaining challenges is set forth below:

---

[2] In the government's restitution position, the restitution owed was $3,253,922.13.  (Dkt. 70.)  After speaking with ISA victims E.F. and S.W. and C.W., the restitution owed is, in fact, $3,244,724.62 for the reasons outlined in Section II.B.1-2 below and in the Second Supplemental Declaration of Agent Ryan Asato ¶¶ 12-14.

2

| Investor Type | Investor Name | Government's Loss Calculation | Defendant's Restitution Challenges |
|---|---|---|---|
| ISA | C.M. | $280,000.00 | Victim Status Undisputed; Loss Amount Disputed ($210,000.00) |
| | A.F. | $195,600.00 | Victim Status Disputed; Loss Amount Undisputed |
| | D.P. | $127,500.00 | Victim Status Disputed; Loss Amount Undisputed |
| | E.F. | $59,570.00 | Victim Status Disputed; Loss Amount Undisputed |
| | S.W. | $98,827.51 | Victim Status Disputed; Loss Amount Undisputed |

Since the restitution hearing, the government has communicated with and confirmed that each of the above ISA victims were victims of defendant's scheme and verified the loss amounts associated with each of the victims.

        1.   <u>The Government Has Confirmed The Victim Status Of A.F., D.P., E.F., And S.W. And C.W.</u>

Defendant argued in his restitution position that the government did not establish that A.F., D.P., E.F., and S.W. and C.W. deposited funds in the ISA account "with the expectation that they would be invested, would grow, or even that they would be returned," suggesting that the deposits could have been made as payment for another service or as a gift. (Dkt. 81 at 7.) The government has communicated with ISA victims A.F., D.P., E.F., and S.W. and C.W., and confirmed that each of them were ISA investors and victims of defendant's ISA investment fraud scheme.

Specifically, A.F. confirmed that she invested with defendant after he represented that he would return $5,000 per month in profit and would pay back her principal after a year. Second Supplemental Declaration of Ryan Asato ¶ 5 ("Asato Decl."). A.F.'s wire transfers

3

to the ISA bank account similarly showed that the transfers were for investment purposes, with notes stating "Private Investor," or "Private Investment." Id. A.F. also sent an email to the government in May 2025 stating that defendant had ruined her life and took everything she had on the promise of providing interest and repaying the principal. Id.[3] Defendant did not challenge that A.F.'s loss amount is $195,600.00.

D.P. similarly confirmed that he sent money to defendant for investment purposes. Asato Decl. ¶ 6. Defendant initially sent investment account statements to D.P., but those investment statements stopped. D.P. was not aware that ISA stopped being registered as an investment advisor in May 2019 or that defendant did not graduate from Harvard University. Id. D.P. said that he would not have invested with defendant if he knew those facts. Id. D.P. submitted a victim impact statement to the government, which was filed with this Court on July 30, 2025. (Dkt. 58.) Defendant did not challenge that D.P.'s loss amount is $127,500.00.

E.F. also confirmed that he sent his money to defendant for investment purposes. Asato Decl. ¶ 7. Defendant told E.F. that he typically required a minimum of $25,000 for stock trading investments, but would accept E.F.'s initial investment of $10,000. Id. Defendant initially sent E.F. monthly investment statements, but stopped sending those statements. Id. E.F. believed that all of the money he sent to defendant was for investment purposes and did not authorize those funds to be used for any other purpose, including

---

[3] A.F.'s email was not a formal victim impact statement, and thus was not included with the government's submission of other victim impact statements. A.F.'s email is attached to the Second Supplemental Declaration of Ryan Asato ("Asato Decl.") ¶ 5.

4

personal expenditures. Id. If E.F. had known that ISA was no longer registered as an investment advisor, or that defendant did not graduate from Harvard University, he would not have invested with defendant. Id. Defendant previously did not challenge that E.F.'s loss amount was $59,570.00, which included a reduction to E.F.'s total investment by $9,630 for a payment E.F. received from the ISA bank account. However, E.F. confirmed that the $9,630 payment was for electrical and paint work he performed for defendant, and was not an investment payout. Thus, E.F.'s loss amount is $69,200.00. Id.

Finally, S.W. and C.W., a married couple, also confirmed that they sent their money to defendant for investment purposes. Asato Decl. ¶ 8. Defendant represented to S.W. and C.W. that he was transferring their money from ISA to Hercules for continued investment and S.W. and C.W. understood at all times that their money would be used for investments. Id. Defendant previously sent S.W. and C.W. investment account statements, but stopped sending those statements in June 2021. Id. S.W. and C.W. said that if they had known investment funds would be used for any purpose other than investing, or that defendant was, in truth, not a Harvard graduate, they would not have invested with him. Id. Defendant previously did not challenge that S.W. and C.W.'s loss amount was $98,827.51. However, S.W. and C.W. confirmed that a previously reduced payment of $1,172.49 was not, in fact, paid to them, but that they withdrew $20,000 of their invested funds for their mother's medical expenses. Id. Thus, S.W. and C.W.'s loss amount is $80,000. Id.

This Court can easily find that it is more likely than not that defendant's misrepresentations and omissions, or his fraudulent use of the ISA victims' investment funds, proximately caused the losses

5

of A.F., D.P., E.F., and S.W. and C.W. <u>Tsosie</u>, 639 F.3d at 1221-22. Their losses are properly attributed to defendant's fraud scheme.

    2. <u>The Government Has Confirmed That C.M. Lost $280,000</u>

The government has also communicated with ISA victim C.M., and confirmed that he lost $280,000.00 to defendant's fraud scheme. Defendant previously argued that C.M.'s loss should be reduced by $70,000 to account for the value of a 2013 Mercedes AMG SL 63 that defendant surrendered to C.M. (Dkt. 81 at 5.) But C.M. has again confirmed that defendant gave him the 2013 Mercedes to satisfy a mechanic's lien and that the 2013 Mercedes was unrelated to C.M.'s investment with ISA. Asato Decl. ¶ 9. C.M. explained that he previously had documentation of the mechanic's lien, but was not able to find it, despite looking through multiple storage units. <u>Id.</u> C.M. also confirmed that he enlisted the services of T.L., who is in the business of filing liens, to file the mechanic's lien. <u>Id.</u> The government has also spoken with T.L., who searched his computer system for relevant files and confirmed that the 2013 Mercedes had 117,575 miles on it, and that he obtained a certificate of lien sale for the vehicle, dated June 9, 2022. <u>Id.</u> at ¶ 10.

Based on C.M.'s repeated confirmation that defendant gave him the 2013 Mercedes in satisfaction of the mechanic's lien, the efforts C.M. undertook to locate documentation of the mechanic's lien, T.L.'s confirmation that he filed the mechanic's lien, and T.L.'s knowledge of details about the 2013 Mercedes that he would only know if he filed the mechanic's lien, this Court can again conclude that that it is more likely than not that the 2013 Mercedes was surrendered to satisfy a mechanic's lien, and was unrelated to C.M.'s ISA investment.

6

**III. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court order restitution in the amount of $3,244,724.62.