TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
Assistant United States Attorney
Acting Chief, Criminal Division
NISHA CHANDRAN (Cal. Bar No. 325345)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-1259/2429
     Facsimile: (213) 894-0141
     E-mail:    alexander.schwab@usdoj.gov
                nisha.chandran@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 23-19-DSF |
| Plaintiff, | GOVERNMENT'S SECOND SUPPLEMENTAL POSITION REGARDING RESTITUTION |
| v. | |
| JAMES ARTHUR MCDONALD, JR., | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys Alexander B. Schwab and Nisha Chandran, hereby files its second supplemental position regarding restitution pursuant to the Court's order dated January 20, 2026 (Dkt. 88).

This second supplemental position regarding restitution is based upon the government's previously filed sentencing position (Dkts. 37, 43, 58) and restitution positions (Dkts. 70, 83), the files and

records in this case, including the Revised Presentence Investigation Report (Dkt. 55), and such further evidence and argument as the Court may permit.

Dated: February 3, 2026

Respectfully submitted,

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

        /s/
NISHA CHANDRAN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

As this Court knows, defendant was the Chief Executive Officer ("CEO"), Chief Investment Officer ("CIO"), and investment adviser representative of Hercules Investments LLC and the CEO and CIO of Index Strategy Advisors Inc. ("ISA"). For years, defendant made false representations to and concealed material facts from his Hercules clients. As a result, defendant's Hercules victim investors invested $675,000 and lost a total of $566,044.37. Defendant also defrauded his ISA clients by falsely representing that he would use their money to trade securities. In reality, he used less than half of the money he raised from ISA clients for trading purposes and conducted no trading at all with ISA client money from October 2020 to May 2021. Instead, defendant frequently commingled ISA client funds with funds from his personal bank account, which itself had been commingled with ISA funds and funds from Hercules clients. Defendant also made Ponzi-like payments to ISA clients -- that is, paying ISA clients using funds from other clients -- and used ISA money to purchase luxury cars and to pay rent on his home, personal credit card charges, and Hercules operating expenses. In total, victim investors in ISA invested $3,284,600.00, resulting in a total loss of $2,678,680. For this conduct, defendant pleaded guilty to one count of securities fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5, on February 19, 2025 (Dkt. 29) and was sentenced by this Court on August 4, 2025 to 60 months' imprisonment (Dkt. 61). The government requests that defendant be ordered to pay full restitution to the victims of his fraudulent scheme in the amount of $3,244,724.62 (see Dkt. 83), and the parties

have engaged in supplemental briefing regarding the amount of restitution owed.

On January 20, 2026, the Court requested that the government submit an additional brief regarding whether 18 U.S.C. § 3663 or 18 U.S.C. § 3663A governed restitution in this case based on defendant's crime of conviction, and regarding which party bore the burden of proving whether the vehicle defendant transferred to C.M. partially compensated C.M. for his loss resulting from defendant's scheme.  For the reasons discussed below, 18 U.S.C. § 3663 and the parties' plea agreement governs restitution in this case.  Additionally, while the government agrees that it bears, and has met, the burden to establish that C.M. suffered losses of $280,000 from defendant's scheme, defendant should bear the burden to prove that the transferred vehicle be reduced or offset from defendant's restitution order.

**II.  ARGUMENT**

    **A.  Restitution Is Governed By 18 U.S.C. § 3663 And The Parties' Plea Agreement In This Case**

Section 3663 governs restitution in this case.  While 18 U.S.C. § 3663(a)(1) applies only to defendants convicted under certain enumerated sections, 18 U.S.C. § 3663(a)(3) states that "[t]he court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement."

The Ninth Circuit has similarly explained that while 18 U.S.C. § 3663(a)(1) is "limited to restitution for offenses under title 18," and other enumerated offenses, "[18 U.S.C. § 3663(a)(3)] applies to offenses under any title of the United States Code."  United States v. Soderling, 970 F.2d 529, 534 (9th Cir. 1992) (emphasis in original).  The Ninth Circuit went on to explain that the "also" in

2

18 U.S.C. § 3663(a)(3) "refers to this expansion beyond title 18 offenses."[1]

Here, defendant pleaded guilty to one count of securities fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5, pursuant to a plea agreement. (Plea Agreement, Dkt. 29, ¶ 4.) That plea agreement clearly stated that "defendant will be required to pay full restitution to the victims of the offense to which defendant is pleading guilty," and that "the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty." (Plea Agreement, Dkt. 29, ¶ 6.) The plea agreement also reflects the parties' agreement that restitution was believed to be between "$2,745,892.64 and $3,025,892.64," but that they "recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing." (Id.)

Accordingly, "[p]lea agreements are contractual in nature and are measured by contract law standards." United States v. Clark, 218 F.3d 1092, 1095 (9th Cir. 2000). "In construing the terms of an agreement and the parties' obligations under it, the courts generally employ traditional contract principles." Id. Here, the parties clearly agreed that defendant would pay full restitution to the

---

[1] Some other circuits disagree in their application of 18 U.S.C. § 3663 and 18 U.S.C. § 3663A to Title 15 offenses. See, e.g., United States v. Petit, 541 F. Supp. 3d 304, 307 (S.D.N.Y. 2021) (citing United States v. Frith, 461 F.3d 914, 919 (7th Cir. 2006)). But those courts have generally agreed that courts may still award restitution as a condition of supervised release, discussed below. See Petit, 541 F. Supp. 3d at 308; Frith, 461 F.3d at 919.

3

victims of his securities fraud scheme.  And 18 U.S.C. § 3663(a)(3) permits the Court to enforce that contractual agreement.

Similarly, in United States v. Meredith, 52 F.4th 984, 987 (5th Cir. 2022), the defendant pleaded guilty to one count of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 77ff.  The Fifth Circuit affirmed defendant's restitution order, explaining that she had agreed to an unspecified amount of restitution in her plea agreement, and that the "statutory support for restitution . . . is the more general restitution statute in [18 U.S.C. § 3663(a)(3)] and its authorization for restitution awards when parties agree to them [rather than 18 U.S.C. § 3663A]."

Alternatively, the Court may award restitution as a condition of supervised release.  It may do so under 18 U.S.C. § 3563(b)(2), without being subject to the limitations of 18 U.S.C. § 3663(a) or 18 U.S.C. § 3663A(c)(1)(A).  See 18 U.S.C. § 3563(b)(2); see also U.S.S.G. § 5E1.1.  The Court can also award restitution as a condition of supervised release pursuant to 18 U.S.C. § 3583(d), in accordance with 18 U.S.C. § 3663 or 18 U.S.C. § 3663A.  Here, defendant's Judgment and Commitment Order states that restitution, once awarded, shall be due as enumerated in the order.  (Dkt. 61.)

In short, the Court may order restitution for defendant's crime of conviction pursuant to 18 U.S.C. § 3663(a)(3) and should enforce the parties' agreement that defendant "will" pay full restitution to the victims of his securities fraud offense.

**B.   The Government Has Shown By A Preponderance Of The Evidence That C.M. Lost $280,000 And Defendant Has Failed To Show He Is Entitled To A Deduction**

Section 3664(e) requires that the government bear the burden of demonstrating the amount of loss sustained by the victim as a result

4

1  of the offense.  18 U.S.C. § 3664(e).[2]  Once the government has
2  satisfied its burden of proving that a person is a victim and the
3  amount of loss, United States v. Waknine, 543 F.3d 546, 556 (9th Cir.
4  2008), "[t]he burden of demonstrating such other matters as the court
5  deems appropriate shall be upon the party designated by the court as
6  justice requires."  18 U.S.C. § 3664(e).  The Ninth Circuit has
7  upheld restitution orders where "it appears that the district court
8  placed this burden on the defendant" to prove that they were entitled
9  to deductions or offsets to the restitution amount.  See United
10 States v. Gagarin, 950 F.3d 596, 608 (9th Cir. 2020) (citing United
11 States v. Crawford, 169 F.3d 590, 59 n.2 (9th Cir. 1999) (defendant
12 argued that his restitution amount should be offset by a payment he
13 made to the victim's family through insurance) and United States v.
14 Serawop, 505 F.3d 1112, 1127 (10th Cir. 2007) (explaining that
15 district court appropriately shifted the burden to defendant to come
16 forward with the amount of offset)).  See also United States v.
17 Price, 2020 WL 7647368, *3 (D. Mon. Nov. 18, 2020) (explaining that
18 after the government established by a preponderance of the evidence,
19 that the victims suffered losses in the amounts claimed, the court
20 can shift the burden to the defendant to refute the government's loss
21 amount by establishing that a deduction is warranted).
22      The Court should apply the same approach here.
23      For the reasons outlined in the government's Sentencing Position
24 (Dkt. 37), Position Regarding Restitution (Dkt. 70), and Supplemental

---

[2] This requirement has been interpreted to mean that "when there is a dispute as to restitution, a restitution order must be supported by evidence in the record showing that it is more likely than not that the defendant's offense proximately caused the losses for which restitution was awarded and that it did so in the amounts awarded." United States v. Tsosie, 639 F.3d 1213, 1221-22 (9th Cir. 2011).

Position Regarding Restitution (Dkt. 83), the government has established that C.M. lost $280,000 to defendant's fraud scheme. (Dkt. 37-2 at Exhibit A, Dkt. 70 at 11-12, and Dkt. 83 at 8-9.) Defendant does not dispute that $280,000 base loss amount.

However, because defendant wishes to claim a $70,000 offset or deduction from that loss amount to account for the value of the 2013 Mercedes AMG SL 63 that defendant surrendered to C.M., the Court should find that defendant bears the burden to establish that this deduction is warranted.

Here, defendant has clearly not met his burden to prove that any deduction is warranted. He relies exclusively on his unsworn say-so. He has provided no corroboration to this Court that the 2013 Mercedes was given to C.M. to compensate for his loss beyond his own self-serving assertions —- assertions made by a now-convicted and sentenced fraudster. But moreover, the government has gone further and disproved defendant's story. The government confirmed with C.M. that defendant gave him the 2013 Mercedes to satisfy a mechanic's lien, and spoke to T.L., who C.M. enlisted to file the mechanic's lien. T.L. then found records regarding the filed mechanic's lien on his computer. (See Dkt. 83 at 8-9.)

Thus, because defendant has failed to meet his burden to establish that an offset or deduction should apply, and because the government has disproved defendant's story by (1) repeatedly confirming with C.M. that defendant gave him the 2013 Mercedes in satisfaction of the mechanic's lien, (2) explaining the effort C.M. undertook to locate documentation of the mechanic's lien, (3) confirming with T.L. that he filed the mechanic's lien for C.M., and (4) verifying with T.L. that he had knowledge of details about the

2013 Mercedes that he would only know if he filed the mechanic's lien for C.M., this Court can conclude that defendant has failed to meet his burden and that no deduction to the established loss amount is appropriate.

### III. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court order full restitution in the amount of $3,244,724.62.