CHARLES P. DIAMOND (SB # 56881)
LAW OFFICES OF CHARLES P. DIAMOND
cdiamond@omm.com
WAQAS A. AKMAL (SB #316601)
DANIELLE TYUKODY (SB #360087)
O'MELVENY & MYERS LLP
wakmal@omm.com
dtyukody@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067-6035
Telephone: +1 310 553 6700
Facsimile: +1 310 246 6779

Attorneys for Defendant
JAMES A. MCDONALD, JR.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAMES ARTHUR MCDONALD, JR.,<br><br>Defendant. | Case No. 2: 23-CR-0019-DSF-1<br><br>**DEFENDANT'S RESPONSE TO GOVERNMENT'S SECOND SUPPLEMENTAL POSITION REGARDING RESTITUTION** |

### I.   INTRODUCTION

On January 20, 2026, the Court requested additional briefing from the government, and invited a reply from James A. McDonald ("Defendant" or "Mr. McDonald") regarding: (1) whether the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, or the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, governs restitution in this case (and by implication, the effect of the choice), and (2) which party, under 18 U.S.C. § 3664(e), bears the burden of proving that the vehicle Mr. McDonald transferred to C.M. partially offsets C.M.'s loss.

As to the first issue, Mr. McDonald and the government agree that restitution in this case is governed by the VWPA, which authorizes the court to order

restitution if the defendant violates prescribed criminal statutes.  18 U.S.C. § 3663(a)(1)(A).  Mr. McDonald pled guilty to a Title 15 offense (Count One alleging securities fraud), which is not an enumerated offense.  *See id.*  However, the VWPA also allows a court to order restitution "to the extent agreed to by the parties in a plea agreement."  18 U.S.C. § 3663(a)(3).  Mr. McDonald only agreed to pay restitution to the Count One victims—the T.I. group members who purchased shares in Hercules.  So, the Court lacks authority under the VWPA to order restitution to victims of any other charges, *to wit*, those who entrusted money to ISA for investment.  Moreover, in determining whether to order restitution under the VWPA to any victims, the Court must balance the victim's loss amount and Mr. McDonald's financial needs and earning ability—including his lack of assets, lack of earning potential, and existing civil penalty obligation—suggesting that the Court order restitution, if at all, in only a nominal amount.

As to the second issue, the government concedes that it bears the burden to establish that C.M. suffered losses of $280,000 because of Mr. McDonald's ISA scheme.  However, the government incorrectly argues that it has met this burden and that Mr. McDonald bears the burden to prove that the transferred vehicle should offset any restitution he owes.  That is not correct, particularly where the government controls the tangible evidence showing the alleged reason for the vehicle transfer and has not produced it.

## II.   ARGUMENT

### A.   Restitution is Governed by 18 U.S.C. § 3663, Which On the Facts Here Only Authorizes Restitution to the T.I. Victims, the Victims of the Offense of Conviction

The parties negotiated the Plea Agreement (ECF #29) and proceeded to sentencing on the incorrect assumption that the MVRA governed restitution in this case.  It does not.  In the Plea Agreement, Mr. McDonald agreed to plead guilty to Count One of the Indictment (ECF #4), which charged him with securities fraud, in violation of 15 U.S.C. §§ 78j (b) and 78ff and 17 C.F.R. 240.l0b-5.  The MVRA is

inapplicable because it does not apply to these offenses. Additionally, the Plea Agreement does not state, specifically or otherwise, that an offense enumerated in the MVRA "gave rise to the plea agreement," which is the only other potential pathway for MVRA applicability.[1]

Thus, as the government now concedes, restitution in this case is controlled by the VWPA. The VWPA allows *but does not require* the court to order restitution after weighing various factors, including the defendant's financial wherewithal. Like the MVRA, the VWPA applies to enumerated offenses, which do not include Mr. McDonald's count of conviction. However, unlike the MVRA, the VWPA permits the court to order restitution in favor of victims of other offenses "to the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(3). In his Plea Agreement, Mr. McDonald agreed to make restitution to the T.I. victims, who were the sole victims of his single count conviction, arising from the use of false statements in connection with the 2021 Hercules Investments LLC fundraise (described at pp. 9-10 of the Plea Agreement, ECF #29 and pp. 3-6 of the Indictment, ECF #4).[2] The parties agree that that their actual loss was $566,044.37. (*See* Defendant's Position Regarding Restitution, ECF #81 at pp. 4-5).

That should be the extent of Mr. McDonald's restitution obligation because the Court lacks jurisdiction to order restitution for the dismissed charges, *i.e.*, those

---

[1] *See* 18 U.S.C. § 3663A(c)(2). To affirm restitution under this section, courts examine whether the plea agreement expressly contains the required language. *See, e.g.*, *United States v. Polukhin*, 896 F.3d 848, 852 n.2 (8th Cir. 2018) (declining to order restitution pursuant to 18 U.S.C. § 3663A(c)(2) where "the plea agreement does not identify an enumerated offense as giving rise to the agreement."). Indeed, the Department of Justice's Justice Manual expressly cautions prosecutors to obtain an "acknowledgement by the defendant in the plea agreement that a mandatory restitution charge gave rise to the plea agreement" when seeking restitution for losses arising from dismissed counts. U.S. Dep't of Just., Justice Manual § 9-16.320 (2018). That was not done here.

[2] "[D]efendant will be required to pay full restitution to the victims of the offense to which defendant is pleading guilty." (Plea Agreement, ECF #29, ¶ 6).

1   arising from Mr. McDonald's earlier acceptance of funds to be managed by ISA
2   that were never invested or returned.  Under the VWPA, restitution in favor of
3   "persons other than the victim of the offense [of conviction]," including claims
4   arising from dismissed counts, may be ordered only "if agreed to by the parties in a
5   plea agreement" and only to "the extent agreed to by the parties in a plea
6   agreement." *See* 18 U.S.C. § 3663(a)(1)(A), (a)(3).  No such agreement exists in the
7   present case.

8        The Ninth Circuit requires that the defendant "specifically agree" in the plea
9   agreement to pay restitution for losses stemming from offenses other than the
10   offense of conviction before restitution may be ordered under 18 U.S.C. §
11   3663(a)(3).  *See United States v. Phillips*, 174 F.3d 1074, 1077 (9th Cir. 1999); *see*
12   *also United States v. Baker*, 25 F.3d 1452, 1458-59 (9th Cir. 1994) ("Because the
13   government has written plea agreements in the past which clearly include a promise
14   by the defendant to pay restitution for unconvicted offenses . . . we cannot read the
15   plea agreement in this case to authorize such enhanced restitution" absent an
16   "express agreement on the part of the defendant.") (internal quotation marks and
17   citation omitted).  To determine whether a defendant has specifically agreed, courts
18   apply traditional "contract principles" to the plea agreement, and construe any lack
19   of clarity, including as to the agreed-upon restitution, against the government.  *See*
20   *Phillips*, 174 F.3d at 1075-77.  The "operative" language that courts look for in a
21   plea agreement to determine whether restitution can be ordered for losses derived
22   from dismissed counts and uncharged conduct is an "agreement to pay" restitution
23   for such losses.  *See In re Doe*, 57 F.4th 667, 675 (9th Cir. 2023); *see also United*
24   *States v. Davis*, 714 F.3d 809, 815 (4th Cir. 2013) ("Absent an explicit agreement
25   to pay restitution to a person other than the victim of the offense of conviction, a
26   court errs in awarding restitution.").

27        Strict application of the requirement of an "agreement to pay" by the Ninth
28   Circuit is evident when one contrasts the court's decisions in *Phillips* and *Doe*.  In

DEFENDANT'S RESTITUTION
RESPONSE

-4-

1   *Doe*, the court upheld a restitution order in favor of dismissed counts where the plea

2   agreement expressly empowered the court to order restitution for dismissed counts

3   and uncharged conduct, ***and*** the defendant agreed in the plea agreement "to pay the

4   victim(s) the full amount of the victim's losses." *Doe*, 57 F.4th at 674-77 (internal

5   quotation marks and citation omitted). The court expressly called out "the

6   agreement to pay" as being the "operative sentence." *See id.* at 675.

7       The Ninth Circuit in *Doe* distinguished its earlier *Phillips* decision, which

8   found that restitution was not authorized beyond the losses caused by the offense of

9   conviction. *See id.* at 675; *Phillips*, 174 F.3d at 1077. In *Phillips*, the defendant

10  acknowledged in his plea agreement that "the Court ***can*** order you to pay restitution

11  for the full loss caused by your activities" and that the "restitution order is *not*

12  restricted to the amounts alleged in the counts to which you are pleading guilty."

13  *Phillips*, 174 F.3d at 1076 (emphasis added). The *Phillips* court held this was *not*

14  *sufficient* to constitute an agreement on the defendant's part to pay restitution to

15  victims other than victims of the offense of conviction. *Id.* at 1076-77. The Ninth

16  Circuit in *Doe* identified the lack of a specific agreement to pay as the

17  differentiating factor between *Doe* and *Phillips*: in *Doe*, the defendant specifically

18  agreed to pay restitution that "would encompass the dismissed counts and

19  uncharged conduct," whereas in *Phillips* the defendant did not. *See Doe*, 57 F.4th

20  at 675.

21      Like the defendant in *Phillips*, Mr. McDonald did not agree in the Plea

22  Agreement to pay restitution to victims other than victims of the offense to which

23  he pled guilty. The Plea Agreement simply contains the government's boilerplate

24  Federal Rule of Criminal Procedure 11(b)(1) acknowledgment that "the Court ***may***

25  order restitution to persons other than the victims of the offense to which defendant

26  is pleading guilty and in amounts greater than those alleged in the count to which

27

28

DEFENDANT'S RESTITUTION
RESPONSE

defendant is pleading guilty" (Plea Agreement, ECF #29, ¶ 6 (emphasis added)).[3]
This acknowledgement, which is virtually the same as in *Phillips*, does not
constitute Mr. McDonald's independent agreement to pay restitution to victims of
dismissed counts and uncharged conduct.

A federal court cannot order restitution unless authorized by statute. *See*
*United States v. Follet*, 269 F.3d 996, 998 (9th Cir. 2001) ("Federal courts have no
inherent power to award restitution, but may do so only pursuant to statutory
authority."). Other than for the T.I. victims, this authority is lacking here.
*Compare United States v. Peterson*, 268 F.3d 533, 535 (7th Cir. 2001) (finding
restitution beyond the offense of conviction appropriate where the defendant agreed
in the plea agreement "to make restitution to all victims of his entire course of
conduct, and agreed further that the district judge could make decisions that proved
necessary to implement this choice."); *United States v. Pathan*, 2024 WL 416942,
*1-2 (W.D. Wash. Feb. 5, 2024) ("plea agreement unambiguously permits the
Court to order restitution beyond the offense of conviction" where the defendant
agrees in the plea agreement that "restitution . . . should not be limited to the
offense of conviction" and "to take responsibility for restitution that . . . arises from
. . . dismissed charges and uncharged conduct"). [4]

---

[3] The Court need only look at other recent plea agreements connected with cases
pending before it that contain similar boilerplate language. *See, e.g., United States
v. Olivo*, C.D. Cal, Case No. 5:23-cr-00075, ECF #24, ¶ 7.

[4] Although the Court did not separately order Mr. McDonald to pay restitution as a
condition of the supervised release, the government suggests that the Court may do
so now by adding restitution of all of his victims as a release condition pursuant 18
U.S.C. § 3583(d), as it incorporates probation release conditions authorized by 18
U.S.C. § 3563(b)(2). That is incorrect. The Ninth Circuit stated in *United States v.
Batson*, 608 F.3d 630, 636-37 (9th Cir. 2010) (emphasis added): "Although
restitution as a condition of probation (and by extension, supervised release) is not
limited to the offenses specified in the VWPA and MVRA, restitution otherwise is
to be ordered 'under section 3556.' 18 U.S.C. § 3563(b)(2). Section 3556 provides
for orders of restitution *in accordance with the VWPA and MVRA*." Hence, the
court held, restitution that could not be ordered under § 3556 as part of the

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.** **Under the VWPA the Court Must Take Into Account Mr. McDonald's Indigency and the Improbability that his Financial Fortunes Will Meaningfully Improve, Which Augers in Favor of Either Declining to Order Restitution, or Ordering Partial Restitution In Favor of the T.I. Victims and Payment of Only Nominal Monthly Amounts**

Since this case is governed the VWPA, the court has "*the discretion* to order a defendant who is convicted of a criminal offense to pay restitution, *in full or in part*, to the victim of that offense." *In re Davis*, 146 F.4th 710, 718 (9th Cir. 2025) (quoting *United States v. Kovall*, 857 F.3d 1060, 1064 (9th Cir. 2017)) (emphasis added). "When exercising that discretion, a district court must consider 'the amount of loss' each victim sustained as a result of the offense, [and] the defendant's financial situation." *Id.* (citing 18 U.S.C. § 3663(a)(1)(B)). The district court has "broad discretion in the kind and amount of evidence" it utilizes to evaluate victim loss amounts and the defendant's financial situation. *See United States v. Van Alstyne*, 584 F.3d 803, 820 (9th Cir. 2009) (citation and internal quotation marks omitted); *see also United States v. English*, 92 F.3d 909, 916 (9th Cir. 1996) (same). Still, "the record must indicate that the district court considered the defendant's future ability to pay," and "a VWPA restitution order must be based on some evidence the defendant may be able to pay the amount fixed when required to do so." *English*, 92 F.3d at 916-17 (citations and internal quotation marks omitted); *see also United States v. Grice*, 319 F.3d 1174, 1177 (9th Cir. 2003) ("Ordering restitution under the VWPA is discretionary and requires the district court to consider the defendant's financial resources and ability to pay.").

Therefore, in assessing whether, and to what extent, to order restitution for Mr. McDonald's offense of conviction, the Court must consider Mr. McDonald's future ability to pay. The Presentence Investigation Report ("PSR") states

---

judgment could not be ordered as a supervised release condition—there to compensate losses that arose other than from the "offense of conviction." *See id.* at 636-37. The same result follows for any claimants here other than the T.I. victims since they are neither victims of the "offense of conviction" nor beneficiaries of Mr. McDonald's express agreement to pay restitution.

1   unambiguously that Mr. McDonald "is facing a lengthy custodial sentence and does

2   not have any current earnings or assets." (PSR, ECF #33, ¶ 177). Not only does

3   Mr. McDonald lack any assets or income, but the PSR also notes he "was ordered

4   to pay a civil penalty in the amount of $3,593,392.01" in the related case, *Securities*

5   *and Exchange Commission v. James Arthur McDonald, Jr., and Hercules*

6   *Investments, LLC*, Case No. 2:22-cv-06799-PA-JPR. (*Id.* ¶¶ 11, 13). All told, Mr.

7   McDonald's many financial obligations listed in the PSR amount to a staggering

8   $3,772,518.01. (*Id.* at ¶ 115). Furthermore, Mr. McDonald's ability to pay off his

9   liabilities is extremely limited for reasons recognized in the PSR: "[though

10  Defendant] has specialized skills as a financial services provider . . . given the

11  nature of his conduct in the instant offense, he is unable to return to his career."

12  (*Id.* at ¶ 117).

13        Given the PSR's assessment of Mr. McDonald's *inability* to make an

14  immediate payment, (*id.* at ¶ 118), and the remoteness of any future ability since he

15  had been barred from pursuing his only livelihood, he respectfully requests that the

16  Court enter no order requiring him to repay the T.I. victims' losses. *See, e.g.*, *Van*

17  *Alstyne*, 584 F.3d at 820 ("at the time restitution is ordered, the record must reflect

18  *some* evidence the defendant may be able to pay restitution in the amount ordered

19  in the future") (citation and internal quotation marks omitted). That will not leave

20  the T.I. victims without recourse. Should Mr. McDonald come into money, the T.I.

21  victims can claim their appropriate share of the civil penalty that the SEC obtained

22  by default against him. And they need not wait that long, as they could make

23  claims to the interpleader funds currently sitting with the L.A. Superior Court,

24  which amounts to more than twice their combined losses.[5]

25        Should restitution to the T.I. victims be ordered in some amount nonetheless,

26

27  _____

    [5] Mr. McDonald has deposited $1.45 million for the benefit of claimants in the state
28  court interpleader action, *Brown Neri Smith & Khan LLP v. McDonald-Hercules et
    al.*, Los Angeles Superior Court, Case No. 22STCV01008.

the Court would still need to "specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of . . . the financial resources and other assets of the defendant . . . projected earnings and other income of the defendant; and . . . any financial obligations of the defendant." 18 U.S.C. § 3664(f)(2). In cases where the court finds that "the defendant's economic circumstances do not allow for either immediate or future payment of the amount ordered," the court may order "[n]ominal restitution payments." *See, e.g.*, *U.S. v. Hale*, 2018 WL 6835206, at *2 (C.D. Cal. Oct. 29, 2018). In such cases, courts have ordered "[r]estitution . . . during the period of imprisonment, at the rate of not less than $25 per quarter, and pursuant to the Bureau of Prisons' Inmate Fiscal Responsibility Program . . . [and] nominal monthly payments of at least 10% of defendant's gross monthly income, but not less than $100, whichever is greater . . . during the period of supervised release" to begin "30 days after commencement of supervision" should "any amount of the restitution remain[] unpaid after release from custody." *Id.*

Nominal restitution payments would be consistent with both Ninth Circuit caselaw and the aforementioned 18 U.S.C. § 3664(f)(2) factors. *See Ward v. Chavez*, 678 F.3d 1042, 1052 (9th Cir. 2012) ("a sentencing court must consider the defendant's financial resources in setting a restitution payment schedule, and, if the defendant is unable to pay restitution immediately, the court cannot simply order 'immediate' repayment"). Imposing greater restitution payments on a more compressed timeline risks financially crippling Mr. McDonald permanently and placing insurmountable roadblocks to Mr. McDonald's rehabilitation and reentry into society.

**C.    The Government Has Not Met its Burden to Show by a Preponderance of the Evidence that C.M. Lost $280,000**

The Court also requested briefing on which party should bear the burden of proving, under 18 U.S.C. § 3664(e), whether and the extent to which the vehicle

DEFENDANT'S RESTITUTION
RESPONSE

Mr. McDonald transferred to C.M. reduces C.M.'s loss resulting from Mr. McDonald's offense. The government bears the burden of demonstrating a victim's actual loss by a preponderance of the evidence when a dispute arises, as is clearly established by 18 U.S.C. § 3664(e) itself and Ninth Circuit caselaw. *See* 18 U.S.C. § 3664(e) ("Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government."); *United States v. Rodrigues*, 229 F.3d 842, 845 (9th Cir. 2000) ("the VWPA only authorizes restitution up to the amount actually lost by the victims"); *United States v. Anderson*, 741 F.3d 938, 954 (9th Cir. 2013) ("Ultimately . . . it is the government's burden to establish that the victim suffered an actual loss in a quantifiable amount" and "[s]peculation and rough justice are not permitted."). "Congress doubtless based this formulation on the assumption that it is the government who normally advocates on behalf of the victim." *United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 924 (9th Cir. 2001).

Although it agrees with this general proposition, the government asserts here that it has met its burden. (Government's Second Supplemental Position Regarding Restitution, ECF #89, p. 2). As to the value of property that Mr. McDonald admittedly returned to C.M., the government claims the burden is the defendant's. But that stands the statutory scheme entirely on its head.

Given that C.M. admittedly accepted the Mercedes vehicle and that Mr. McDonald has supplied credible evidence of its market value, the defense is only asking the government to provide reliable evidence to meet *its* burden to prove the C.M's *actual* loss, taking into account any property returned to the victim. The Ninth Circuit places this burden on the government, not the defendant: "the victim is entitled to the value of the property less the value . . . of any part of the property that is returned . . . The government has the burden of proving these values by a

DEFENDANT'S RESTITUTION RESPONSE

-10-

1    preponderance of the evidence." *United States v. Yeung*, 672 F.3d 594, 601 (9th

2    Cir. 2012), *abrogated on other grounds by Robers v. United States*, 572 U.S. 639

3    (2014) (citations and internal quotation marks omitted).

4         The government has failed to meet its burden.  It claims that the returned

5    property was not truly returned since C.M. accepted the vehicle's surrender in

6    satisfaction of a supposed mechanic's lien, which it challenges Mr. McDonald to

7    dispute.  But where, as here, the parties dispute restitution, "§ 3664 minimally

8    requires that . . . the district court [] utilize only evidence that possesses sufficient

9    indicia of reliability to support its probable accuracy." *United States v. Waknine*,

10   543 F.3d 546, 557 (9th Cir. 2008) (citation and internal quotation marks omitted).

11   Where a defendant objects to conclusory victim affidavits provided by the

12   government purporting to demonstrate a victim's actual loss, "it is the responsibility

13   of the government, aided by the victim, to provide adequate reliable evidence"; it

14   would be "unreasonable to expect" that the defendant provide counter evidence

15   where the government has failed to meet its burden.  *See id.* at 557-58.

16        In this case, the government has failed to produce any invoice, ledger, lien

17   filing, or other contemporaneous documentation to support its assertion that Mr.

18   McDonald incurred unpaid charges for C.M.'s repair of the Mercedes or that the

19   vehicle was surrendered to C.M. to satisfy a mechanic's lien.  This failure is

20   noteworthy given that the government had ample time to find such evidence, and,

21   one would expect, opportunities since mechanic's liens should be documented in

22   publicly available files to which T.L. could easily direct the government.  It is

23   doubly so given the Court's urging at the November 10, 2025 restitution hearing

24   that the government produce such documentation, and the acknowledgment of

25   Agent Asato in his Second Supplemental Declaration of the existence of tangible

26   evidence documenting at least the mechanic's lien—but not necessarily the

27   underlying repair bill—which the government seemingly declined to obtain to

28   avoid a mere copying fee.  (ECF #83-1, ¶ 10).

DEFENDANT'S RESTITUTION
RESPONSE

-11-

1    Without tangible evidence, the government instead insists that Mr.

2  McDonald and the Court accept C.M.'s story that he made repairs to the Mercedes,

3  that he rendered an invoice for his services, and that he retained T.L. to obtain a

4  mechanic's lien so the car could be sold in satisfaction of the outstanding repair

5  charges.  Mr. McDonald disputes that he owed a repair bill.  The government offers

6  nothing in rebuttal aside from a hearsay account of T.L. that he recorded a

7  mechanic's lien.  (*Id.* at ¶¶ 9-11).  While that undocumented account might be true,

8  it still fails to establish the existence of a legitimate underlying debt for an unpaid

9  repair bill.

10    The dispute over the return of the Mercedes turns on whether C.M. ever

11  charged Mr. McDonald for the repair he claims supported his mechanic's lien.

12  C.M.—and by extension, the government—exclusively control that evidence; Mr.

13  McDonald is hardly in a position to document the *absence* of a debt for a contested

14  repair.  Were it necessary to resolve the restitution controversy, the Court would

15  thus be entitled to place the burden on the government under 18 U.S.C. § 3664(e) of

16  establishing by a preponderance of the evidence whether and the extent to which

17  the vehicle Mr. McDonald transferred to C.M. partially compensated for C.M.'s

18  loss resulting from Defendant's offense.  However, since the VWPA and the Plea

19  Agreement do not authorize restitution in favor of C.M. in any amount, the Court

20  need not make such a finding.

21

22    Dated:  February 17, 2026              Respectfully submitted,

23

24    CHARLES P. DIAMOND
     WAQAS A. AKMAL
25    DANIELLE TYUKODY

26    By:  */s/ Danielle Tyukody*

27    Attorneys for Defendant
     James A. McDonald, Jr.

28

DEFENDANT'S RESTITUTION
RESPONSE