TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
Assistant United States Attorney
Acting Chief, Criminal Division
NISHA CHANDRAN (Cal. Bar No. 325345)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-1259/2429
     Facsimile: (213) 894-0141
     E-mail:    alexander.schwab@usdoj.gov
                nisha.chandran@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 23-19-DSF |
|---|---|
| Plaintiff, | <u>GOVERNMENT'S RESPONSE TO DEFENDANT'S RESPONSE TO GOVERNMENT'S SECOND SUPPLEMENTAL POSITION REGARDING RESTITUTION AND REQUEST FOR DECLARATION OF BREACH</u> |
| v. | |
| JAMES ARTHUR MCDONALD, JR., | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Alexander B. Schwab and Nisha Chandran, hereby files its response to defendant James Arthur McDonald, Jr.'s response to the second supplemental position regarding restitution and request for a declaration that defendant has breached his plea agreement.

This response is based upon the attached memorandum of points

//

//

and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 5, 2026				Respectfully submitted,

						TODD BLANCHE
						Deputy Attorney General

						BILAL A. ESSAYLI
						First Assistant United States Attorney


						      /s/
						ALEXANDER B. SCHWAB
						Assistant United States Attorney

						Attorneys for Plaintiff
						UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  Defendant's New Argument That the Court Lacks Jurisdiction To Order Restitution for the Dismissed Counts Is Both Contrary to the Plea Agreement and a Breach of It**

After stealing millions from clients, investors, and friends who trusted him, defendant, rather than face accountability, fled the state and used a fake ID to avoid apprehension.  Although he faced the prospect of far greater punishment, this Court showed him great leniency, sentencing him to a below-guideline sentence of five years' imprisonment.

It is therefore all the more disappointing that defendant has now gone beyond nickel-and-diming his victims to directly contradicting what he agreed to in his plea agreement.  This is not a good faith litigating position.  The Court can and should impose restitution pursuant to the Victim Witness and Protection Act (VWPA) because defendant stipulated to the Court's authority to do so under his plea agreement.

Neither party disputes that a defendant may "agree in a fully bargained-for plea agreement to make restitution for losses caused by offenses other than those to which he pleads guilty in return for a promise by the government not to prosecute the defendant for those other offenses."  United States v. Soderling, 970 F.2d 529, 532 (9th Cir. 1992).  Defendant asserts, however, that "[n]o such agreement exists in the present case" (CR 90, at 3), and cites the first sentence of paragraph 6 of the plea agreement, which reads, "Defendant understands that defendant will be required to pay full restitution to the victims of the offense to which defendant is

pleading guilty." (Id. at 3, n.2.). That, however, is not the end of the paragraph. It continues:

> Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in USSG § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed or charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in USSG § 1B1.3, in connection with those charges. The parties currently believe that the applicable amount of restitution is between $2,745,892.64 and $3,025,892.64, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

(Plea Agreement ¶ 6.) The language is explicit: defendant agreed, in exchange for the benefits of the plea agreement, that the Court could impose restitution for "any counts dismissed or charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in USSG § 1B1.3, in connection with those charges." That includes the broader fraudulent conduct beyond that which victimized the T.I. investors, and defendant himself already agreed that he believed "the applicable amount of restitution is between $2,745,892.64 and $3,025,892.64."[1]

The language in defendant's plea agreement is clear -- he made a promise to pay restitution and agreed the Court could order restitution for dismissed charges in return for certain benefits.

---

[1] Defendant's PSR also contained the following language, to which he did not object: "McDonald understands that he will be required to pay full restitution, which may be based on relevant conduct to the offense of conviction and dismissed counts. The parties currently believe the applicable amount of restitution is between $2,745,892.64 and $3,025,892.64." (CR 55, at 5.)

2

Now that he has received those benefits, he is reneging on his obligations. By arguing the Court "lacks jurisdiction" to order restitution, defendant has breached the agreement.[2]

## II. The Caselaw Supports Ordering Restitution for the Dismissed Counts

This is a far cry from the situations where courts have ruled that the parties did not agree to restitution under the VWPA. See United States v. Baker, 25 F.3d 1452, 1458 (9th Cir. 1994) ("[N]o provision of the agreement states that [the defendant] agrees to a level of restitution beyond the loss caused by the offense of conviction . . . . The agreement does not mention the dismissed counts at all."). Rather, the language in defendant's plea agreement is far clearer than language the Ninth Circuit has found adequate to trigger the VWPA. In United States v. Nelson, 454 F. App'x 574 (9th Cir. 2011), for example, the Ninth Circuit held that, despite the availability of statutory restitution for Title 26 offenses, restitution was appropriate under the VWPA because of the parties' plea agreement. Id. at 576. That plea agreement, in turn, only provided, "Defendant understands that the Court may order defendant to pay any additional taxes, interest and penalties that defendant owes to the United States." United States v. Nelson, No. CR 08-583-AHM, Dkt. 26, at 2. The language here is far more explicit.

In a letter sent to the government Wednesday evening, defendant cites two cases, neither of which supports his claim.

---

[2] The government conferred with defense counsel on March 3 to afford defendant an opportunity to withdraw this argument and cure the breach. Defense counsel declined to do so.

3

- In United States v. Phillips, 174 F.3d 1074 (9th Cir. 1999), the Ninth Circuit concluded that plea language in a tax case providing that the district court "can order you to pay restitution for the full loss caused by your activities" was ambiguous as to whether it applied to the dismissed security charges or just additional tax losses because the defendant "did not specifically agree to pay restitution for the securities fraud counts in exchange for the government's promise to drop those charges." Id. at 1077. The plea agreement here, though, explicitly references the dismissed counts and any relevant conduct to those counts.
- In United States v. Ramilo, 986 F.2d 333 (9th Cir. 1993), the Court held that a defendant's plea agreement did not waive his right to appeal his restitution order by stating, "defendant understands that the court may order restitution . . . to the following individuals in the amounts listed." Id. at 334. By contrast to defendant's plea agreement, this provision was "not an agreement that Ramilo would pay restitution in the amounts listed in exchange for a lighter sentence." Id. Even then, the Ninth Circuit did not conclude -- as defendant argues -- that the district court lacked jurisdiction to order restitution, just that defendant had not waived appeal and the sentencing court was obligated to consider the defendant's financial resources, which was a relevant consideration before the 1996 amendments to the VWPA. Id. at 335.

4

Finally, based on its conferral with defense counsel, the government understands that the defense views the plea agreement's language that "the Court may order restitution" is not part of an agreement authorizing the Court to order restitution but rather some sort of representation that the parties cannot predict what the Court will do. Aside from the fact that courts have deemed far less explicit text sufficient under the VWPA, see Nelson, 454 F. App'x at 576, this reading strains basic logic. The phrase "the Court may order restitution" comes at the end of a phrase beginning "[d]efendant agrees that." The provision also explicitly states that the defendant entered the agreement "in return for the USAO's compliance with its obligations." It is not a stray remark made in a vacuum.

**III. Defendant Owes Restitution Without Regard to His Financial Resources**

Citing various cases concerning conduct that stretches back to before 1996, defendant argues that, under the VWPA, a district court must consider a defendant's ability to pay when crafting a restitution order. See, e.g., United States v. Van Alstyne, 584 F.3d 803, 820 (9th Cir. 2009); United States v. English, 92 F.3d 909, 916 (9th Cir. 1996). What he omits is that, along with enacting the Mandatory Victims Restitution Act in 1996, Congress also amended the VWPA, and "the amended version of the VWPA requires the court to impose 'full' restitution without considering the defendant's economic circumstances." United States v. Baggett, 125 F.3d 1319, 1322 (9th Cir. 1997); see Pub. L. No. 104-132, Title II, § 206(a), 110 Stat. 1232 (Apr. 24, 1996). Specifically, § 3664, which governs restitution orders under both the MVRA and VWPA, provides that "[i]n

each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1). Accordingly, "§ 3664 directs the court to order restitution of the full amount of a victim's loss without regard to the defendant's economic circumstances and -- echoing VWPA § 3663 -- without regard to other sources of compensation for the victims." United States v. Bright, 353 F.3d 1114, 1121 (9th Cir. 2004).

While ignoring § 3664(f)(1), defendant does cite the following subsection, § 3664(f)(2), for the proposition that the Court must construct a restitution payment schedule based on a defendant's ability to pay. (CR 90, at 9.) On this topic there is no dispute, and the government defers to the payment schedule proposed by the Probation Office.

**IV.   The Court Should Order Victim C.M. Restitution of $280,000**

There is little to add to the government's prior filing as to restitution owed to Victim C.M. Defendant does not grapple with this analysis but instead misapprehends the issue. It is the government's burden to establish, by a preponderance of the evidence, the "amount of the loss sustained by" C.M. "as a result of the offense." 18 U.S.C. § 3664(e) (emphasis added). But the loss is not at issue. The parties agree defendant's scheme inflicted losses of $280,000. Rather the remaining question is whether defendant's restitution obligation for that loss should be offset by some subsequent payment defendant claims to have made. And, as the government has already explained and defendant fails to address, the burden for making that showing is appropriate to place on the defendant. (CR 89, at 4-5.)

6

By defendant's logic, any defendant could claim to have repaid victims, provide no evidence in support of the claim, and demand that the prosecution prove a negative.  That is not the law.

In any event, an offset is not to be determined as part of the restitution order.  Rather, § 3664 provides that "offsets are instead to be handled separately as potential credits against the defendant's restitution obligation -- not as reductions in the amount of that obligation in the first instance."  <u>Bright</u>, 353 F.3d at 1121.

**V.   CONCLUSION**

Defendant's plea agreement is clear, and his violation of its terms is blatant.  The Court should grant specific performance of the agreement by ordering restitution consistent with its terms.  The Court should also declare that defendant has breached the plea agreement.